**37 P.(2d) 1110**

**OTERO v. DIETZ et al.**

No. 3959.

Supreme Court of New Mexico.

Nov. 20, 1934.

J. S. Vaught, of Albuquerque, for appellants.

Hanna & Wilson, of Albuquerque, for appellee.

SADLER, Justice.

On October 17, 1924, Albert Simms, as trustee, recovered judgment before the district court of Bernalillo county against Alfredo J. Otero and Moses Abousleman upon a certain obligation which Abousleman had signed as surety for Otero. Transcript of the judgment was docketed in Sandoval county, where Otero owned real estate, on October 20, 1924. On March 7, 1925, Abousleman made settlement with Simms, the trustee, and took an assignment of the judgment. Thereafter, and on July 6, 1928, Abousleman for a recited consideration of $1,800 assigned the judgment to Candelaria Otero, wife of Alfredo Otero, "as her sole and separate property." Executions issued on this judgment on October 17, 1924, May 29, 1925, June 20, 1927, and June 19, 1928, antedating a suit to revive same begun by Candelaria Otero before the district court of Bernalillo county on September 11, 1930.

Judgment of revivor was entered November 19, 1930. Thereafter and on January 5, 1931, under execution issued out of the original cause and on the original judgment, certain real estate involved herein was sold to Candelaria Otero and the deed to her from the sheriff of Sandoval county issued pursuant to such sale is the basis of her title relied upon as plaintiff in ejectment, form of the present action.

So much for the appellee's title and the manner of its origin.

On November 19, 1924, before the district court of Sandoval county, the late Neill B. Field recovered judgment against the same Alfredo J. Otero heretofore mentioned, docketing a transcript thereof with the county clerk of said county on January 25, 1925. Alfredo J. Otero, having conveyed the property involved to Candelaria Otero, his wife, on June 1, 1927, thereafter and on September 23, 1927, the said Neill B. Field began suit before the district court of Sandoval county to set aside such conveyance as a cloud upon the title to said property preventing the satisfaction of his judgment lien, and prayed for the foreclosure of his lien and a sale of the property in satisfaction thereof. The then defendants, Alfredo J. Otero and Candelaria Otero, following an order of the trial court sustaining plaintiff's demurrer to their answer which urged certain defenses, refused to plead further and, upon entry of judgment for the then plaintiff, Field, brought the case to this court for review. An affirmance resulted. See Field v. Otero, 35 N. M. 68, 290 P. 1015.

After mandate to the court below such proceedings were had as resulted in the judgment creditor, Field, becoming purchaser of the property at a special master's sale ordered for the purpose of satisfying the Field judgment. The special master's deed, issued July 20, 1931, pursuant to such sale, thus becomes the basis of title claimed by the late Neill B. Field during his life-time and asserted by his executrix and the trustees under his will since his death.

Mr. Field, as purchaser, entered into possession of the property acquired and so continued at the time of trial in July, 1933. On February 18, 1932, Candelaria Otero, as plain-

tiff, commenced suit in ejectment against him before the district court of Sandoval county, seeking possession of the land in question and damages for its detention. The defendant having died pending suit, the cause was revived as against the executrix and trustees under his last will and testament. In a trial before the court without a jury, a judgment in plaintiff's favor for restitution to the property and damages in the sum of $800 resulted. This appeal by the executrix and trustees followed.

 As we view the matter, but one question is before us for determination, and that the priority of the respective judgment liens under the foregoing state of facts; for while the defendants assign and argue error by the trial court in permitting plaintiff's subrogation to the Simms' judgment and in the award of damages for detention of the land, we should have to go outside the record to ascertain that the first question was ever presented or ruled upon by the trial court. As to the award of damages, it could scarcely be argued, if available, that there is not substantial evidence to support the finding upon which the award is based. But the finding is in the record without exception and for that reason the question of sufficiency of the evidence to sustain it is not reviewable.

█ So we turn to the decisive question, viz., priority of judgment liens. As appears, the Simms' judgment upon which plaintiff relies has priority both of recovery and of docketing with the county clerk of Sandoval county, situs of the land in controversy. Execution thereon issued, not once but four times within five years following its recovery. We are hence brought immediately to a consideration of pertinent statutory provisions. They are as follows:

"Any money judgment rendered in the supreme or district court shall be docketed by the clerk of the court in a book kept for the purpose, and shall be a lien on the real estate of the judgment debtor from the date of the filing of a transcript of the docket of such judgment in such book in the office of the county clerk of the county in which such real estate is situate." Comp. St. 1929, § 76-110.

"It shall not be necessary to bring proceedings in any court to revive a judgment having been already obtained before a court of competent jurisdiction in this state, except in cases where such judgment had been rendered for a period of five years or more next preceding the issue of final process for the enforcement of the same." Comp. St. 1929, § 76-117.

"An execution may issue at any time, on behalf of any one interested in such judgment referred to in the above section, within five years after the rendition thereof, and without the necessity of bringing an action to revive the same." Comp. St. 1929, § 76-118.

"Actions founded upon any judgment of any court of the state of New Mexico may be brought within seven years from and after the rendition of such judgment, and not afterward. * * *" Comp. St. 1929, § 83-102.

At common law execution might issue on a money judgment at any time within a year and a day following its rendition. Browne

& Manzanares Co. v. Chavez, 9 N. M. 316, 54 P. 234; Id., 181 U. S. 68, 21 S. Ct. 514, 45 L. Ed. 752. If not so issued, the judgment became dormant. If so issued, it did not become dormant; and "on the contrary, executions might issue for its enforcement during its life of 20 years." Browne v. Chavez, supra. But the enactment of Laws 1887, c. 61 (Comp. St. 1929 §§ 76-117 and 76-118), extended the time within which executions might issue without revivor to five years. In Crowell v. Kopp, 26 N. M. 146, 189 P. 652, 653, we said: "Sections 3085 and 3086 come from chapter 61 Laws 1887. Previous to the passage of this chapter we had no statute enlarging the time beyond the common-law year and a day within which execution might issue on a judgment. The chapter merely enlarged the time within which execution might issue without first reviving the judgment." In the same case we held that the "final process" intended by the use of that phrase in section 76-117 is the "execution" mentioned in section 76-118.

Prior to the passage of Laws 1891, c. 67, § 1 (Comp. St. 1929, § 76-110), the mere rendition of a money judgment, as at common law, created no lien. Moore v. Davey, 1 N. M. 303; Crenshaw v. Delgado, 1 N. M. 376; Kaseman v. Mapel, 26 N. M. 639, 195 P. 799. As early as 1859, Mr. Chief Justice Benedict writing for the Territorial Supreme Court in Crenshaw v. Delgado, supra, deplored the lack of legislation on the subject, saying: "The court can not fail to regret that during about fifteen years of territorial legislation, the assembly of New Mexico has omitted to pass acts fully defining and establishing what

liens result upon property upon the rendition of judgments, and the manner of distributing among creditors the assets of the insolvent estates of deceased persons. In the absence of such legislation the courts are often troubled with great anxiety in the search to find some rule or law among the civil laws of Spain and Mexico, to aid or guide them in their decisions."

It was not until 1891, as indicated, that the legislation besought by Chief Justice Benedict as to judgment liens came into being. Until then the method appropriate to acquiring a lien under judgment was through execution thereon: 34 C. J. 567; Moore v. Davey and Crenshaw v. Delgado, supra. Thus, when sections 76-117 and 76-118 of the 1929 Compilation were enacted in 1887, extending the time within which executions might issue without revivor, their effect, if any, on the act of 1891 authorizing judgment liens, could not have been present in the legislative mind, for the act was then nonexistent.

But, the effect at common law of issuance of execution within a year and a day, being to prevent dormancy and thus extend life of the judgment for the full period of twenty years, with every incident and attribute theretofore obtaining, the enactment of the law of 1887 wrought no change whatever in existing law, save to extend the period for issuing execution from a year and a day to five years. The period of limitations then applicable to judgments was fifteen years. C. L. 1884, § 1861. This was reduced to seven years by the same Legislature (Laws 1891, c. 53, § 1 [now Comp. St. 1929, § 83-102]) which

passed the act authorizing the creation of judgment liens. Laws 1891, c. 67, § 1, Comp. St. 1929, § 76-110.

Accordingly, when the Legislature in 1891 said that upon the doing of certain acts by the judgment creditor, there should attach as an incident to his judgment a lien, we see no reason upon principle for denying the existence of the lien, so long as the judgment itself possesses full vitality.

In our opinion the judgment relied upon by plaintiff (appellee here) never became dormant. It was recovered October 17, 1924. Execution issued four times within five years thereafter. This forestalled dormancy of the judgment within the period of limitations, seven years. The property was sold to plaintiff under the fifth execution, issued, served, and completely executed, well within the period of seven years after rendition.

While it is true the plaintiff sued to revive and procured an order of revivor during the two year hiatus existing between expiration of the five-year period and the end of the seven-year period when the judgment becomes barred, still she need not have done so. Her judgment and the lien thereof were in full force, lacking only enforcement. This she accomplished through the fifth execution issued well within the statutory period of limitations.

The meaning we give the statute seems inescapable. Section 76-117 says expressly that *"it shall not be necessary* to bring proceedings in any court to revive a judgment" theretofore obtained *except* where same has been rendered more than five years next pre-

ceding issuance of "final process" (execution) for enforcement of same. Now, if execution has issued within five years, and within the period of limitations, can anything be plainer than this: That suit to revive is not necessary? The statute says it is not. It was enacted, as we have held, merely to extend the common-law period of a year and a day to five years. And if at common law issuance of execution within a year and a day gave the judgment full vitality for the whole period of twenty years, is there any valid reason for saying that under our statute issuance of execution within five years does not maintain it in full vigor for seven years? We think not.

Had no execution issued within five years, the judgment would have become dormant at the end of such period and would have remained so until barred at the end of seven years, unless revived in the meantime. Whether upon revivor of a judgment that has become dormant, intervening liens or incumbrances take priority over any lien previously existing under the dormant judgment, is a question unnecessary to decide and upon which we express no opinion.

Judgment of the lower court will be affirmed and it is so ordered.

WATSON, C. J., and BICKLEY, J., concur.

ZINN, J., did not participate.

HUDSPETH, Justice (dissenting).

I am of the opinion that a judgment under our statute becomes dormant five years after

its entry. The question decided in Crowell v. Kopp, 26 N. M. 146, 189 P. 652, is stated in the syllabus by the court as follows: (Syl. 4) "Sections 2190, 2191, 3085, 3086, 3347, and 4185, Code 1915, interpreted, and held that a decree of foreclosure of a mortgage is not such a judgment as falls within the terms of the statute which renders a judgment dormant after five years from its rendition, nor does such a decree become inoperative after seven years from its rendition." An excerpt from the opinion by Chief Justice Fuller in Browne, Manzanares & Co. v. Chavez, 181 U. S. 68, 21 S. Ct. 514, 515, 45 L. Ed. 752, furnishes some evidence as to what was there considered the meat of the statute: " * * * The reference to revivor in such cases treats scire facias, if used, as an action. It was enacted by the act of 1887, now sections 3085 and 3086 of the Compiled Laws of 1897, that it should not be necessary 'to bring proceedings in any court to revive a judgment having been already obtained before a court of competent jurisdiction in this territory, except in cases where such judgment had been rendered for a period of five years or more,' and that an execution might issue at any time 'on behalf of anyone interested in such judgment referred to in the above section, within five years after the rendition thereof, and without the necessity of bringing an action to revive the same.' * * * "

The statute contains no reference to the common-law practice, but covers the subject. See 23 C. J. 376. I am unable to concur in the construction placed upon the language of the statute by the majority of the court, and I therefore dissent.