**161 P.2d 714**

## PUGH v. HEATING & PLUMBING FINANCE CORPORATION.

No. 4896.

Supreme Court of New Mexico.

Sept. 5, 1945.

Frazier & Quantius, of Roswell, for appellant.

G. T. Watts and O. O. Askren, both of Roswell, for appellee.

BICKLEY, Justice.

The plaintiff, on the 13th of November, 1942, sued to quiet her title to real estate against a purported judgment lien obtained against her and her former husband in favor of defendant. Defendant answered with certain denials and by way of new matter that on November 25, 1931 defendant obtained judgment against plaintiff and J. H. Bass, then husband and wife, in the district court of Chaves County; that said judgment was duly docketed and a transcript thereof filed in the office of the county clerk of said county on December 21, 1931; that the judgment and the judgment lien created thereby are owned by the

defendant, and have been so owned since their rendition and creation; that no part thereof had been paid and that J. H. Bass left the State of New Mexico in 1932, and since said date has been a nonresident; that plaintiff and J. H. Bass were divorced on November 30, 1932; that plaintiff acquired part of the property here involved by virtue of the divorce decree and part by conveyance from said J. H. Bass. These averments are sustained by the court's findings.

By an amended counterclaim defendant repeated essential allegations of its affirmative answer and added thereto the following:

"7. That the plaintiff has acknowledged in writing the obligation due to Defendant as above set forth, and said Judgment and indebtedness is now a valid and subsisting claim against the Plaintiff."

The prayer of the counterclaim was for the foreclosure of the judgment lien.

The plaintiff answered the counterclaim, putting at issue the allegations thereof in which she admitted that she had not paid the judgment or any part thereof and denying that the same was justly due the defendant and specifically denying the allegations contained in paragraph 7 of defendant's counterclaim heretofore quoted. Plaintiff replied to defendant's answer by way of new matter that plaintiff had at all times since the rendition of the judgment been within the jurisdiction of the court and that the defendant failed to show a

revival of the judgment and that the same is barred by the statute of limitations.

It is not contended that the judgment or the lien founded thereon, which were more than eleven years old when this action was commenced, have ever been revived by court action or otherwise unless they have been revived by admission of plaintiff that the judgment is unpaid.

Plaintiff, answering under protest, interrogatories propounded to her, admitted that the judgment was unpaid. It is claimed also that her counsel, Mr. Watts, admitted in a letter to defendant, seeking a compromise, that the judgment is unpaid. Defendant also asserts that the absence of J. H. Bass from the state interrupted the running of the statute of limitations against actions founded on the judgment.

The case presents many interesting questions, some of which are of first impression, and which are affected to a degree, and arguendo at least, by statutes of recent origin. We think it may be of value, even at the expense of brevity, to call attention to these statutes, for what they may be worth, in answering the questions presented.

We assume that this is a money judgment and therefore that a transcript of the docket thereof, duly filed in the office of the county clerk, was effectual to create a lien on the real estate of the judgment debtor. 1941 Comp. § 19-906. Defendant asserts that this statute, since it is silent as to the duration of the lien, such lien con-

tinues after the judgment upon which it is founded has lost its vitality beyond the reach of legal renovation.

We think appellant is mistaken. It is held in Browne & Manzanares Co. v. Chavez, 9 N.M. 316, 54 P. 234, affirmed in 181 U.S. 68, 21 S.Ct. 514, 45 L.Ed. 752, that a judgment barred by statute of limitations (1941 Comp. § 27-102) is dead. The specific holding was that the judgment barred by the statute of limitations of 7 years cannot be revived by scire facias. The holding in that case is not impaired by our decision in Baca v. Chavez, 32 N.M. 210, 252 P. 987.

A timely revivor of a judgment may have the effect to also continue the judgment lien, subject possibly to displacement as to priority by intervening liens or encumbrances. See Otero v. Dietz, 39 N.M. 1, 37 P.2d 1110. But when a judgment can no longer be enforced because of the 7 year statute of limitation, the lien has expired with the judgment.

Our research discloses that in other states there are a variety of statutory provisions as to the respective duration of judgments and the liens based thereon. In some instances it is provided that the lien is of shorter duration than the judgment; sometimes it is the reverse. See Freeman on Judgments, 5th Ed. Sec. 1006. Mr. Freeman, after alluding to the variety of statutory provisions, says:

"If the statutes of the state have not provided any limit of the time in which judgment liens continue to operate, they will be held to be operative during the time in which the judgment creditor is entitled to take out execution for the purpose of enforcing his judgment."

And Mr. Freeman says in the same section:

"A statute making an abstract of a Justice's judgment filed in the district court, a lien 'until the expiration of 6 years,' when construed in connection with a statute limiting the life of Justice's judgments to 6 years, is held to limit the lien to the period for the enforcement of the original judgment."

This serves to aid us in keeping in mind the distinction between the judgment, and the judgment lien which is of statutory origin.

To the same effect is the text of 31 Am. Jur., Judgments, Sec. 359, where it is said:

"In the absence of a statutory provision to the contrary, the lien of a judgment continues as long as the right to the issuance of an execution, or the maintenance of an action or scire facias on the judgment is not barred."

And see Lyon v. Cleveland, 170 Pa. 611, 33 A. 143, 30 L.R.A. 400, 50 Am.St.Rep. 782, where it is said:

"While the right of seizure lasted, the judgment was said to be a lien on the defendant's real estate.

"When the right of seizure was lost by lapse of time, the judgment was said to have lost its lien."

And in Lamon v. Gold, 72 W.Va. 618, 79 S.E. 728, 729, 51 L.R.A., N.S., 883, it was said:

"The creditor's right to the lien of his judgment is gone forever when his right to sue out execution on the judgment or to revive it by scire facias is barred."

And the Court of Civil Appeals of Texas said in Oakwood State Bank v. Durham, 21 S.W.2d 586, 589:

"But, if by reason of the recording of the abstract of judgment March 27, 1919, a lien had attached as against Belton Durham, as said judgment, as pleaded by appellees, became barred by limitation on May 29, 1924, and of no further force or effect, the judgment lien, if any, on said date necessarily ceased to be of any validity."

 A word of caution should be interjected here. As hereafter shown in our discussion of defendant's counterclaim it would seem that the statute of limitations controlling foreclosure of judgment liens may be of shorter duration than that controlling actions founded on judgments alone. All we say in this immediate connection is that the lien is gone when the right to enforce the judgment is gone. The converse, i. e., that the right to foreclose the judgment lien exists as long as the judgment is enforceable by the ordinary means does not necessarily follow.

But says appellant, there is another way in which judgments, and liens based thereon, may be revived. Its counsel points to 1941 Comp. § 27-115 as support for this contention. We quote the section in full:

"Revival of causes of action.—Causes of action founded upon contract shall be revived by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith. Provided, that no admission that the debt is unpaid or new promise to pay the same shall be effective to extend the lien of any mortgage upon real estate or any interest therein given to secure the original indebtedness, unless such admission that the debt is unpaid or new promise to pay the same, signed by the party to be charged therewith and acknowledged by such party in the form prescribed by law for the acknowledgments of instruments affecting real estate, shall be filed for record in the office of the county clerk where said original mortgage is of record, prior to the date when any action to foreclose said mortgage lien would otherwise be barred under existing law; and provided further, that the foregoing proviso shall not be applicable to any recorded mortgage upon real estate or any interest therein until after three (3) months from the effective date of this act. (Laws 1880, ch. 5, § 13; C.L. 1884, § 1873; C.L. 1897, § 2926; Code 1915, § 3356; C.S. 1929, § 83-111; Laws 1939, ch. 71, § 1, p. 130)."

The 1939 amendment added the proviso which is not important to our present consideration except as it points to the legislative view that the far reaching effect of recorded liens upon subsequent purchasers and encumbrancers demands for their protection and the repose of titles to real estate

something in addition to the acts said to constitute a revival of the cause of action founded on contract. We might observe in passing that even if a judgment could be revived by an admission that it is unpaid, or by a new promise to pay the same, it would not necessarily follow that the lien effectuated by the recordation of the transcript of the docket of the judgment is likewise revived. In other words, it is not apparent that the rationale of the proviso in the statute last above quoted is not applicable in reason to the lien of judgments. In fact, it would seem that there is greater reason for the application of this principle to judgment liens than to mortgage liens, since the latter kind is limited to the property described in the mortgage, whereas a judgment lien covers all the real estate the judgment debtor owns or acquires. This situation caused the Idaho Supreme Court to say in Platts v. Pacific First Federal Savings & Loan Ass'n, 1941, 62 Idaho 340, 111 P.2d 1093, 1096:

"Purchasers and encumbrancers may look to and rely on the record. While a partial payment or extension may very well extend the maturity date and toll the statute of limitations, sec. 5-238, I.C.A., it would not extend or continue the judgment lien unless made in writing so as to entitle it to be recorded and placing it of record where it would become notice to subsequent purchasers and encumbrancers."

There are divergent views as to whether an admission in writing that a judgment, barred by the statute of limitations or a written new promise to pay the same is sufficient to revive the judgment. See Am.Jur. "Limitation of Actions" Sec. 291, and annotations in 21 A.L.R. 1038; 8 L.R.A.,N.S., 440, 9 Ann.Cas. 254. And see Bailey v. Great Western Oil Co., 32 N.M. 478, 259 P. 614, 55 A.L.R. 467, holding that in some respects a judgment may be considered to be a contract.

It is interesting to note that this last mentioned opinion cites Way v. Colyer, 54 Minn. 14, 55 N.W. 744, in support of the statement that a judgment is a contract within the meaning of the code provision that in an action arising on contract, any other cause of action arising also on contract may be the subject matter of a counterclaim, and yet one of the best reasoned cases holding to the view that a judgment does not come within the rule that a new promise suspends the operation of the statute of limitations and revives and continues the cause of action is Olson v. Dahl, 99 Minn. 433, 109 N.W. 1001, 1002, 8 L.R.A.,N.S., 444, 116 Am.St.Rep. 435, 9 Ann.Cas. 252, the court saying:

"The question presented in the case at bar is whether a judgment for the recovery of money comes within the rule applicable to part payment, and whether, when made, it will revive the judgment and continue it in force. It is not at all difficult to demonstrate, theoretically at least, that a judgment is a contract. Blackstone makes the statement in his commentaries that it is, and some of the authorities, following in line with his theory, have classed it with special-

ties. 3 Blackstone's Commentaries, 160; Sawyer v. Vilas, 19 Vt. 43. But a practical consideration of the question, in the light of the essentials to the existence of valid contract relations, leads to the contrary conclusion. In fact, the weight of authority, both in England and this country, is to the effect that a judgment is not a contract in any proper sense of the term. 1 Black on Judgments, 8; Bidleson v. Whytel, 3 Burr. 1548; Morley v. [Lake Shore, etc.], Ry. Co., 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925; Jordan v. Robinson, 15 Me. 167; Wyman v. Mitchell, 1 Cow. 316; O'Brien v. Young, 95 N.Y. 428, 47 Am.Rep. 64; Smith v. Harrison, 33 Ala. 706; [Wyoming Nat.] Bank v. Brown, 7 Wyo. 494, 53 P. 291, 75 Am.St. Rep. 935. It is treated as a contract for certain purposes by some of the courts, for instance, in construing statutory provisions permitting several causes of action arising upon contract to be united in the same complaint. On the other hand, it is held not a contract within the meaning of the Constitution, prohibiting legislation impairing the obligation of contracts (Morley v. [Lake Shore, etc.], Ry. Co., 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925); *nor within the rule by which the statutes of limitations are tolled by a new promise or part payment.*" (Emphasis supplied.)

Since the trial court assumed that a cause of action consisting of a judgment though barred by the statute of limitations could be revived by an admission in writing that it was unpaid, and proceeded to a decision that the evidence did not show an admission sufficient for that purpose, we will proceed to a review of what was decided without deciding the interesting question heretofore posed in the last foregoing paragraphs.

With respect to the alleged admission that the judgment was unpaid, the court found: "That shortly before the filing of this action, G. T. Watts as attorney for the plaintiff, wrote a letter to the defendant reciting the judgment, stating that it had not been paid, that it was a lien upon the one-half interest in the real estate which the plaintiff acquired from her former husband J. H. Bass, and in the letter made an offer of compromise which offer was not accepted." From which the court concluded as a matter of law: "The letter of G. T. Watts dated September 28, 1942, to the defendant and cross-complainant did not revive the judgment lien or debt for the reason it was made as an offer of compromise, and for the further reason it was not signed by the plaintiff."

The section of the statute invoked to effect a revival says that to be effective the admission in writing that the debt is unpaid must be "signed by the party to be charged therewith," which does not fit the facts in the case at bar.

In the annotation in 21 A.L.R., heretofore cited at p. 1063, we find the following:

"In Nelson v. Becker, 1891, 32 Neb. 99, 48 N.W. 962, the court expressly assumed, without deciding, that an acknowledgment tolled the statute, but held that the evidence was insufficient to show an acknowledgment. It appeared in this case that the

judgment debtor had written letters which referred to the judgment as a 'wrongfully procured judgment' and as a 'wicked judgment,' and contained an offer to pay a small amount for discharge. The court said: 'The defendant, in the other two letters, does not acknowledge that the judgment is an existing liability. They mention the judgment, it is true, but that is not of itself sufficient. In the first letter the defendant speaks of it as the "wrongfully procured judgment," and insists that it is barred in Nebraska by the Statute of Limitations. In the other, he refers to it as the "wicked judgment." The defendant was liable in New York, as the judgment was not barred there. The letters were nothing more than propositions to give $40 to buy his peace. The fair and reasonable construction of the language used indicates that it was not the intention of Becker to unqualifiedly acknowledge that he was bound for the satisfaction of the judgment. To remove the bar of the statute, the debtor must unqualifiedly acknowledge an existing liability. * * * A mere reference to the indebtedness, although consistent with its existing validity, and implying no disposition to question its binding obligation, or a suggestion of some action in reference to it, is not such an acknowledgment as is contemplated by the statute. There must be an unqualified and direct admission of a present subsisting debt on which the party is liable.' "

And, see annotation to 12 A.L.R. 554 on "Unaccepted offer to compromise debt as tolling or removing bar of Statute of Limitations" where a large number of cases are cited supporting the proposition that an unaccepted offer of compromise standing alone is not sufficient to toll or bar the statute of limitations.

And in 34 Am.Jur., Limitation of Actions, Sec. 303, it is said:

"Although there are instances in which an unaccepted offer of compromise has been held sufficient to take a case out of the statute of limitations, the weight of authority supports the rule that an unaccepted offer to compromise a claim does not constitute such an acknowledgment of an indebtedness as will imply a promise to pay it, at least where the offer does not contain an unqualified admission of a subsisting indebtedness, and, therefore, standing alone such offer is not sufficient to toll the statute."

And see also annotation in 97 A.L.R. 374, on "Extrajudicial admissions of fact by attorney as binding client." The author says:

"The cases are almost unanimous in support of the doctrine that an attorney at law, by reason of his mere employment in connection with litigation, pending or prospective, has no power to affect his client by admissions of fact made out of court, and not made for the specific purpose of dispensing with proof of the facts admitted."

There is no evidence in the case at bar that Attorney Watts was specifically authorized by the plaintiff to make any admissions that the judgment was due and unpaid, or authorized to make such admis-

sions as would have the effect to toll or remove the statute of limitations.

■ It may be said in passing, as a sidelight on our consideration of the court's findings and conclusions with respect to the alleged admissions, said by defendant to have the effect of reviving the judgment, and the lien based thereon, that in view of the strong assertion by some of the courts heretofore mentioned, and collected in the case notes heretofore referred to, to the effect that a judgment does not come within the rule that an admission that the debt is unpaid or that a new promise suspends the operation of the statute of limitations and revives and continues the cause of action, we would feel disposed to indulge a strong presumption of the correctness of the trial court's ruling that the evidence produced does not show a sufficiently clear and explicit acknowledgment of the obligation of the judgment to toll the running of the statute of limitations, and a heavy burden would rest upon the appellant to show that the findings and conclusions of the trial court were erroneous in this regard.

■ Furthermore, we must accept the appraisal of the letter of Mr. Watts written to the defendant, as made by the trial court, since the letter is not in the record, and we think the court reached the correct legal conclusion.

■ For similar reasons we agree with the trial court that the statement of plaintiff's attorney in the answer to the counterclaim that the plaintiff "does not have sufficient information or knowledge to admit or deny the ownership of said judgment,

or whether any part thereof has been paid, except she admits she had paid no part thereof, and specifically denies that the same is justly due the defendant by this plaintiff," even if it could be regarded as an unequivocal admission that the judgment was unpaid, it would not come within the statute providing for the revival of causes of action founded upon contract by an admission that the debt is unpaid, since the admission is not "signed by the party to be charged therewith", and it is not established that the admission made by her attorney in the pleading aforesaid was specifically authorized by the plaintiff, at least not for the purpose now claimed for it by defendant. Furthermore, there is no showing in the record that the counterclaim was introduced in evidence as an admission designed for the purpose of having the effect of reviving the judgment.

■ We come now to the material interrogatories and answers thereto, which defendant claims embody an admission in writing that the judgment is unpaid:

"5. Have you paid anything to this Defendant on the Judgment mentioned above? Answer: 5. I have paid nothing on this judgment because I do not owe it.

"6. To your knowledge has J. H. Bass paid anything on said Judgment? Answer: 6. To my knowledge J. H. Bass has paid nothing on the judgment.

"7. Are you seeking to quiet title against the said judgment solely on the basis that it is more than 7 years old? If so, please so state; if not, please state the basis of

your quiet title action. Answer: 7. I am seeking to quiet title against the judgment on the basis that I have been advised that I do not owe the judgment and that it is a cloud upon the title and should be removed by a suit to quiet title.

"8. Are you willing to pay the said judgment, or any part thereof? Answer: 8. I am not willing to pay the judgment or any part thereof in that I do not owe it.

"9. If you answer 'no' to question 8, please state your reasons for such answer, and if you answer 'yes', please state how you propose to pay. Answer 9. I answered question 8 in the negative for the reason that I do not owe the judgment."

The plaintiff made the following objections to the interrogatories above quoted:

"III. That she objects to the answering of Interrogatories 5, 7, 8 and 9 for the reason it is attempted by the attorneys for the defendant to obtain the answers of this plaintiff to said interrogatories for the purpose of tricking the plaintiff into making a written acknowledgment of said judgment, in order that the defendant might bring a new suit and action to revive said judgment against this plaintiff, based upon said written acknowledgments as contained in the answers which the plaintiff would have to make to said interrogatories and such trickery is not contemplated by the rules promulgated by the Supreme Court under which said interrogatories are sought to be propounded and such are not sanctioned by this Court or any other Court.

"IV. That she objects to answering interrogatory 6 in that it is well known to the defendant and not known to this plaintiff whether or not J. H. Bass has paid anything on said judgment."

Defendant relies upon the statement of this court in Joyce-Pruit Co. v. Meadows, 27 N.M. 529, 203 P. 537 that:

"The fact that the admission is made in a deposition in answer to cross-interrogatories does not alter its effect."

It is to be noted that the opinion in that case stressed the fact that the statements were voluntarily made, the court saying:

"Appellees were witnesses in their own behalf; the depositions were taken on their own motion; they were in no sense compelled to testify or to sign the depositions which contained the admission. The statements were voluntary in fact, and we know of no rule that makes them involuntary in law. That the statements as to the non-payment of the note were made in a judicial proceeding, under the sanctity of an oath, would seem to lend strength to the admission instead of a reason for avoiding its effect. The statute does not except such admission from its terms, and we cannot do so."

We think the trial court properly distinguished that case as not being controlling in the case at bar, and properly concluded that the statement was not voluntary.

The trial court made the following finding of fact and conclusion of law touching this matter:

### Finding of Fact

"That after the institution of this action, certain interrogatories were propounded to the plaintiff, which questions and her answers thereto have been introduced in evidence in this case; that in the signed answers to the interrogatories the plaintiff admitted the judgment and refused to make payment on the basis that she had been advised she did not owe the judgment, and that there was a cloud upon her title which should be removed by suit to quiet title."

### Conclusion of Law

"The answers of the plaintiff to the interrogatories were made over her protest and only in obedience to the order of the Court, and should not be made a basis for the revival of the debt or judgment lien then barred."

We do not find that the court committed error in these rulings.

■ There is no merit to defendant's contention that the statute of limitations was tolled because the co-judgment debtor was absent from the state during a portion of the period. It is uncontroverted that plaintiff has at all times been within the jurisdiction of the court since the rendition of the judgment set up by the defendant. Hence it is difficult to see how the defendant was in any way prejudiced by the absence of J. H. Bass from the state in enforcing its judgment against the plaintiff or in enforcing the lien based thereon by foreclosure against her property upon which a judgment lien was asserted. It is suggested, but not decided, that at least so far as a foreclosure of the lien under the provisions of Ch. 7, L. 1933, quoted post, the action would be in rem and could proceed upon substituted service against the absent Bass.

From all the foregoing, and what is hereafter said, we are brought to the conclusion that the defendant's judgment is dead and that the lien acquired by recording a transcript of the docket thereof died with it.

■ At this point an interesting query is presented.

Defendant in its brief says:

"If a lien is patently void, as asserted by Plaintiff, it is not a defect upon the title.

"Thus, it is to be observed that Plaintiff is not entitled to quiet her suit merely because the lien has become barred by limitation, if it has, and (then) Plaintiff would have no case."

Among the conclusions of law requested by defendant was the following:

"A judgment barred by limitation is not a cloud on title."

Hence, apparently the defendant would contend that there is no occasion for the intervention of a court of equity to quiet title of plaintiff. The record presents the singular situation of the defendant, endeavoring by every means at its command to show that the lien is valid and active, while the plaintiff claiming the lien is a cloud on her title is vigorously asserting that such lien is void and unenforceable. There is much to be said in favor of a policy which would deny to liens or claimed interests in real es-

tate which are void or unenforceable on the face of the record the status of clouds on title. On the other hand, the contrary has been asserted. See annotation in 78 A.L.R. 24–313 on "What constitutes cloud on title removable in Equity." See particularly subdivision III of the annotation on "Requirement that pretended title or lien be apparently valid." And also, subdivision V entitled "Instruments and proceedings no longer operative", and subdivision thereof (c) "Titles and liens lost by limitation, delay or failure to record or enforce." And at p. 106 it is said:

"Liens which were acquired by virtue of judgments or levies of execution, and which have become barred by limitations or by delay in enforcing them, and sales based on such liens, have been set aside as clouds."

But this view is challenged, some courts saying that such purported but extinguished liens may be annoyances to the owner of the title but they are not actually clouds thereon.

In this situation, what effect, if any, shall we give to the provisions of House Bill No. 226, chapter 34, enacted by the 17th Legislature, (1945) mentioned in the briefs of each of the parties and which has become law and is as follows:

"Seventeenth Legislature
 State of New Mexico

"House Bill No. 226

"Introduced by A. B. Carpenter.

"Referred to Judiciary Committee

"An Act to Amend Section 25-1301 of the 1941 Compilation: Being Section 1,

Chapter 174 of the Laws of 1937 Relating to Suits to Quiet Title.

"Be It Enacted by the Legislature of the State of New Mexico:

"Section 1. That Section 25-1301 of the 1941 Compilation being Section 1, Chapter 174 of the Laws of 1937, be and the same is hereby amended to read as follows:

"An action to determine and quiet the title of real property may be brought by anyone having or claiming an interest therein, or by the holder of any mortgage, mortgage deed, trust deed, or any other written instrument which may operate as a mortgage, in an action brought to foreclose the said mortgage, mortgage deed, trust deed, or such other written instrument, whether in or out of possession of the same, against any person or persons, claiming title thereto, or parcel or portion thereof, or lien thereon, *whether such lien be a mortgage or otherwise.* Any number of tracts of land may be embraced in the same action when they lie in the same county; whether claimed by different persons or not. *Title may be quieted against the owner or holder of any mortgage, claim of lien or other encumbrance, where the owner or holder of such mortgage, lien or encumbrance has permitted same to become barred by Statute of Limitations, and where the record or documentary evidence reflects that the required time to bar such mortgage or other lien has elapsed, the same shall constitute prima facie evidence that the debt or obligation and lien securing same is barred, and the owner or hold-*

*er of such mortgage, lien or claim shall be estopped from asserting any rights thereunder in such suit."*

(The italics indicate the 1945 amendments)

There might be considerable doubt as to whether the act is, or could be, retroactive so as to control our decision. But we think we may at least give it the effect of a legislative expression of a preference for the view that the fact that a lien has been extinguished or is unenforceable because of the lapse of time, does not preclude a court of equity from taking jurisdiction and quieting title against it.

From the foregoing we conclude that the court was not in error in its conclusion of law No. 5, that,

"That although the judgment lien of plaintiff is barred by limitation it constitutes a cloud on the title of the plaintiff, and she is entitled to a decree discharging said cloud."

We now come to the contention of the defendant that the district court erred in refusing to award defendant relief on its counterclaim.

We very much doubt whether the rule of civil procedure, being rule 13, 1941 Comp. § 19-101, rule 13, governing counterclaim and cross-claim, authorizes the counterclaim set up in the case at bar which seeks to foreclose the purported lien of a judgment in favor of the defendant and against the plaintiff, is a proper subject for counterclaim in a suit to quiet title by the plaintiff.

The defendant in its brief emphasizes the word "any" in the clause "defense to *any* cause of action." We think that all this means is that a counterclaim may be pleaded as a defense to any cause of action which under the controlling rules and statutes may properly be pleaded *but for* the running of the statute of limitations. It would seem like saying that one could pull himself up by his boot straps to say that a defendant in a suit to quiet title, being confronted with the decision of the court that the defendant's judgment lien although it has expired by the lapse of time, could nevertheless be enforced if he called his proceeding a counterclaim or cross complaint.

We think the lien created by the statute authorizing the recordation of a transcript of the docket thereof is a right as distinguished from a remedy, and that if the remedy of foreclosure of the judgment lien prayed for in the counterclaim is barred, the lien has been extinguished.

So, we think that when the judgment is dead and can no longer be revived because of the application of the 7 year statute of limitations, and not otherwise revived, the right of the judgment creditor to his lien has also been extinguished, and that even if by some means not apparent to us, the judgment could be revived by action founded thereon "notwithstanding" the bar of the statute of limitations the right to the lien on the former judgment has been lost and any lien that might thereafter be created would be a new lien based upon a

new judgment, if followed by the statutory proceeding of docket and recordation, etc.

This seems a good place to advert to the nature, creation and duration of statutory judgment liens on real estate. By 1941 Comp. § 19-906, a money judgment rendered in the Supreme or district court shall be docketed by the clerk of the court in a book kept for the purpose, "and shall be a lien on the real estate of the judgment debtor *from the date of the filing of a transcript of the docket of such judgment* in such book in the office of the county clerk of the county in which such real estate is situate." (Emphasis supplied.)

Sec. 19-907 requires the county clerk to record said transcript. This is manifestly to give notice to the public dealing with the property of the judgment debtor of this new right claimed by the judgment creditor. It may also serve to prevent the judgment debtor from disposing of his real estate pending issuance of execution on the judgment.

So it appears that from the very words of the statute creating the lien, that it does not *become* a lien until the provisions of the statute are complied with. Such a lien did not exist at common law, and can only operate by virtue of the statute. Kaseman v. Mapel, 26 N.M. 639, 195 P. 799. It was said in Platts v. Pacific First Federal Savings & Loan Ass'n, supra:

"So that it will be seen that this statute instead of being a limitation or regulation of a common-law right, confers a new and unusual right. It differs also from a mort-gage or other *contract lien,* wherein and whereby the debtor voluntarily encumbers, pledges, or hypothecates certain specific property for the payment of his debt. In the latter case the debtor specifies the property to be encumbered and leaves the rest of his property free and clear of the cloud of the obligation. A judgment lien, however, preferred under the foregoing statute, is involuntary and extends to *all the realty* owned by the judgment debtor within the county wherein the judgment is docketed."

Our statute is even more drastic since apparently the judgment creditor may file transcripts of the docket of the judgment in every county of the state in which the judgment debtor may own, or may acquire, real estate, thus attaching the lien to all of the real estate of the judgment debtor in the state.

The Idaho court in Platts v. Pacific First Federal Savings & Loan Ass'n, supra, proceeded with an argument to show that the limitation prescribed by statute of the time within which liens of the nature here under consideration must be asserted and foreclosed, is not the ordinary statute of limitation, which is waived if not pleaded, saying: "The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone." and cited an opinion holding that in liens of this nature the section authorizing the lien to be foreclosed within a certain time after the claim of lien had been filed should be construed as though it provided that the lien should not

continue unless proceedings were commenced within the proper time, and that the lien after the statutory period for enforcing it was of no effect as against the interest of a mortgagee—and it was said that a case cited held:

"That the lien created thereby lapsed by its own limitation where no action was commenced within six months after the date of filing the lien."

Our statute governing limitation on enforcement of mechanics liens (1941 Comp. § 63-209) is more specific than the one controlling creation and enforcement of judgment liens. It is there said:

"No lien provided for in this article binds any building * * * for a longer period than one (1) year after the same has been filed, unless proceedings be commenced in a proper court within that time to enforce the same."

 We do not think the absence from the statute creating judgment liens of the words that it shall not bind the real estate of the judgment debtor for a longer period than the same is enforceable is fatal to the contention that reading our statutes in pari materia together, and keeping in mind the nature of the lien, that is the effect anyway.

 Chapter 7, Laws 1933, 1941 Comp. § 21-114 et seq., is as follows:

"An Act Relating to the Foreclosure of Judgment Liens

"S.B. No. 28; Approved February 11, 1933.

\* \* \* \* \* \*

"Section 1. Any person holding a judgment lien on any real estate situated in this state may subject said real estate to the payment of his judgment by a foreclosure suit in any court of competent jurisdiction, such suit to be instituted and prosecuted in the same manner as ordinary suits for the foreclosure of mortgages, and the sale thereunder to be held in the same manner and subject to the same rights of redemption as in sales held under mortgage foreclosure decrees.

"Sec. 2. Neither the issuance or levy of execution shall be a pre-requisite to the bringing of such suit, nor shall any appraisal of the real estate be required.

"Sec. 3. The defendant, if he desires to claim such real estate or any part thereof as an exemption allowed by law, shall set up his claim of exemption by answer in such foreclosure suit.

"Sec. 4. The method of procedure provided by this Act shall be available to the holder of the judgment lien at his option, but shall not be exclusive. Nothing herein contained shall be construed as diminishing or altering any existing remedies, by execution or otherwise, now afforded by law to a judgment creditor."

Sec. 2 seems to point to the sufficiency of the remedy of the foreclosure proceedings without resort to levy of execution, and to emphasize the view that the lien and the judgment, though related, are separate rights. This is further emphasized by the employment of the phrase in Section 4,

"the holder of the judgment lien." Such holder or owner has two or more rights, i.e., the right to the lien, which is a sort of substantive or property right, and a right to the remedies to enforce the lien.

The counterclaim asserts that: "Defendant should have its judgment lien foreclosed, pursuant to law, against said lands in the name of the plaintiff," followed by a prayer to the same effect. Since the counterclaim does not seek to pursue any other "existing remedies, by execution or otherwise", independently of a foreclosure of the judgment lien created by the statute, we need not decide at present as to what other remedies, if any, may be "now afforded by law" for the enforcement of such liens.

The foreclosure statute above quoted does not say when the foreclosure suit must be commenced. So we must have recourse to Ch. 27, 1941 Comp. entitled, "Limitation of Actions."

If section 27-104, which states that "all other actions not herein otherwise provided for and specified within four (4) years," applies, defendant's lien was extinguished in four years after the transcript of the docket of the judgment was filed in the office of the county clerk.

If it can be properly contended that the language in Sec. 1 of the foreclosure statute that: "such suit to be instituted and prosecuted in the same manner as ordinary suits for the foreclosure of mortgages," brings in the provision of Sec. 27-103 which embodies the six year statute of limitations for actions founded on written instruments, the defendant's lien was extinguished 6 years after the transcript of the docket of the judgment was filed in the county clerk's office unless some other existing remedy exercised or potential served to keep the lien alive.

The transcript of the docket of the judgment was filed in the office of the county clerk December 21, 1931. The plaintiff's suit to quiet her title was commenced November 13, 1942 and the defendant's counterclaim was filed November 20, 1942.

So, if defendant were permitted to proceed on her counterclaim notwithstanding the remedy of foreclosure, viewed in the ordinary sense as a remedy was barred, yet since the burden of making proof to support the counterclaim would be on defendant, it would have to prove that it was the holder and owner of the lien sought to be foreclosed, which it could not do because the lien had been extinguished by failure of the holder thereof to commence action to foreclose the same either within 4 to 6 years, or otherwise to enforce said lien.

Whether the statutory judgment lien could be revived, or extended or how, we do not pretend to say. Doubts heretofore expressed as to whether a judgment could be revived by an admission that it is unpaid, by virtue of the provisions of Sec. 27-115, stating that causes of actions founded on contract could be so revived, would become more acute as to a contention that the statutory judgment lien could be revived by an admission that the judgment had not been paid.

Freeman on Judgments, 5th Ed., Sec. 1012, discusses the subject of extending and reviving judgment liens, but since we have heretofore in this opinion concluded that even the judgment was not revived, for stronger reasons the statutory judgment lien would not be so revived.

Whether the judgment lien may still exist for the benefit of the judgment creditor after the expiration of the period of the appropriate statute of limitation in which foreclosure of the lien may be commenced under the provisions of Ch. 7, L.1933, and could be enforced by execution or otherwise after the expiration of such period, or whether the statutory lien may outlive the judgment until the expiration of the 4 or 6 year period for effectuating the statutory foreclosure under Ch. 7, L.1933, we do not undertake to say, but manifestly since the time in which execution could issue in the case at bar under any of the methods applicable to the judgment in this case had long · expired, and no procedure for the "otherwise" enforcement of the judgment lien coming to our attention, we hold the lien relied on to support the counterclaim had lost its vitality and could not be the basis of the relief sought in said counterclaim.

 Defendant, in support of its counterclaim, points to 1941 Comp. § 27-114, in which it is said:

"A set-off or counterclaim may be pleaded as a defense to any cause of action, notwithstanding such set-off or counterclaim may be barred by the preceding provisions of this chapter, if such set-off or counterclaim so pleaded was the property or right of the party pleading the same at the time it became barred and at the time of the commencement of the action, *and the same was not barred at the time· the cause of action sued for accrued or originated.*" (Emphasis supplied.)

Under the facts in this case, and looking at the matter realistically, the plaintiff could not have quieted her title against the judgment lien until such lien had become barred. A suit by plaintiff to· quiet title against a valid, existing and enforceable lien would doubtless have been met with a counter move on the part of the defendant, the holder of the judgment lien, to enforce its judgment lien.

1941 Comp. § 25-1302 seems to imply that the claim contemplated as adverse to the estate of the plaintiff is one that the defendant asserts and which he should be barred and estopped from asserting, so, in the complaint in the case at bar it is alleged by plaintiff that the defendant makes some claim adverse to the interest and title of the plaintiff, but that defendant has no right, title or interest in said property. The defendant comes in and asserts a lien which the court finds to be barred. The only reason which the plaintiff asserts in support of her prayer that the defendant be barred and estopped from claiming the lien is that it is barred by the statute of limitations. The plaintiff, so far as the present record shows, could not reasonably have asserted that the defendant had no right or interest in the property until the statute of limita-

tion had run against the defendant's lien. So, is it not permissible to say that defendant's asserted counterclaim was barred within the true spirit of this statute when plaintiff's cause of action sued upon accrued or originated?

In Hopkins v. Walker, 244 U.S. 486, 490, 37 S.Ct. 711, 713, 61 L.Ed. 1270, 1275, the court, in considering a somewhat similar question in a suit to remove a cloud from plaintiff's title said:

"It hardly requires statement that in such cases the facts showing the plaintiff's title and the existence and invalidity of the instrument or record sought to be eliminated as a cloud upon the title are essential parts of plaintiff's cause of action."

It seems clear that since the plaintiff did not, and perhaps could not, assert the "invalidity" of the lien until the statutes of limitations had run against its enforcement, that her cause of action did not accrue or originate until she could truthfully assert that the purported lien had become invalid.

It would seem that under the last clause of the statute, next above quoted, defendant's right, if any, which was the basis of its counterclaim became barred at the same instant of time that plaintiff's cause of action to quiet title against defendant accrued or originated.

This is but one of the reasons for the conclusion we reach on this branch of the case. After careful consideration we are not persuaded that the trial court was in error in refusing defendant relief on its counterclaim.

We are not impressed with defendant's contention that the trial court should not have awarded relief to the plaintiff except upon condition that she pay the judgment.

The chancellor's discretion was not moved under the facts in this case to an application of the rule that he who seeks equity must do equity, and principles of review do not call for a contrary conclusion here. See Platts v. Pacific First Federal Savings & Loan Ass'n, supra. And the rule was held not to be applicable in Sheets v. Prosser, 16 N.D. 180, 112 N.W. 72 (cited by U. S. Sup. Ct. in Hopkins v. Walker, supra), deciding that payment of the debt for which a mechanic's lien was claimed will not be required as a condition to removing the cloud on title caused by the record of the lien which has become forfeited by failure to institute foreclosure proceedings on demand.

A reference to House Bill 226 heretofore quoted reflects a legislative view that it is not inequitable to seek to quiet title against the owner or holder of a claim of lien, where the owner or holder of such lien has permitted same to become barred by the statute of limitations. That the rule is a valuable one may not be questioned. We merely say that it is not applicable to the present review.

Finding no error the judgment must be affirmed. And, it is so ordered.

MABRY, C. J., and SADLER and LUJAN, JJ., concur.

BRICE, J., did not participate.