247 P.2d 860

**TIDWELL v. REEDER et al.**
No. 5511.

Supreme Court of New Mexico.
Sept. 12, 1952.

Rehearing Denied Sept. 26, 1952.

Rodey, Dickason, Sloan, Mims & Akin and John D. Robb, Albuquerque, for appellants.

Jones & Stiff and Wm. C. Briggs, Albuquerque, for appellee.

McGHEE, Justice.

The plaintiff is an automobile service station operator and the defendants are owners of the Valley Oil Company, an unincorporated wholesale petroleum distribution enterprise. The plaintiff brought this action for a declaratory judgment to determine whether he is under a duty to purchase gasoline and other petroleum products used in the operation of the service station exclusively from the defendants.

On November 14, 1948, O. C. Shields, the sole owner of the Valley Oil Company, leased certain unimproved lots in the City of Albuquerque from the owners thereof, the New Mexico Credit Corporation, Hugh B. Woodward and Helen K. Woodward, his wife. The term of the lease was for fifteen years, at annual rental of $1,200 per year, and the premises were to be used as an automobile service station. The lessee covenanted to improve the leased property at his expense, the improvements to become the property of the lessors on the termination of the lease. The lessee was given the right to assign the lease or sublet any part of the premises, but such assignment or sublease was not to alter the obligations of the lessee under the lease.

Prior to the execution of the lease Shields had shown the property to the plaintiff and had entered into an arrangement with him whereby the plaintiff was to erect at his expense buildings and other improvements necessary for the enterprise and operate it, while Shields was to install pumps and tanks for the vending of gasoline.

After the execution of the lease Shields and the plaintiff proceeded with the arrangement and the plaintiff obtained from Shields an assignment of the lease, absolute in form, and containing a provision the plaintiff was to have the use of the pumps and tanks installed by Shields free of charge during the term of the lease, but he actually paid one-eighth of a cent more per gallon for his gasoline than others who owned their pumps.

The plaintiff purchased his gasoline and other petroleum needs from Shields for the operation of the business and paid the monthly rental installments to Shields, who in turn paid the lessors. Then, in June of 1950, Shields sold the Valley Oil Company to the defendants. In October, 1950, the plaintiff attempted to pay the rental installment directly to the lessors. The defendants objected and for some months both the plaintiff and the defendants attempted to pay or did pay rent for the premises. On March 7, 1951, the plaintiff notified the defendants he was discontinuing his purchases of gasoline and petroleum products from them and offered to purchase the tanks, pumps and connections. The offer was refused and this action followed.

The defendants contended the assignment from Shields to the plaintiff was a conditional one and was secured from Shields upon the representation of the plaintiff that he had to have the assignment in order to finance the building of the service station, and further contended the plaintiff was under a duty, for the duration of the lease, to purchase his supply of gasoline, etc., from the defendants as owners of the Valley Oil Company.

The trial court found, in substance, as follows: (1) No contract was ever made between the plaintiff and Shields providing for the purchase of gasoline and other products exclusively from Shields' Valley Oil Company. (2) At the time the assignment of lease was made no representation was made by the plaintiff to Shields that the assignment was merely for security for the financing of the improvements to be erected by the plaintiff. (3) The financing of the improvements was not secured by the assignment of lease, but was obtained solely upon the personal credit of the plaintiff.

The lower court concluded the assignment of lease was absolute in form and substance and that there was no subterfuge, fraud or mistake in the execution and delivery of the assignment. The court found it was the local custom for the retailer of gasoline and oil using equipment of a distributor to purchase such equipment from the distributor upon discontinuance of purchases of the products of the distributor. The trial court declared the plaintiff had the right to terminate at any time the purchase of gasoline or other products from the defendants, subject to tender by the plaintiff of the reasonable value of the pumps, tanks and connections originally installed by Shields and to reimbursement of the defendants for duplicate rental payments made by them to the lessors. The court further provided in the event the parties could not reach agreement upon the reasonable value of the equipment that an appraiser would be appointed to determine said value. The court also declared that if the defendants refused tender of the reasonable market value of the equipment the plaintiff could discontinue purchase of defendants' products and the use of the name of the Valley Oil Company, by using equipment other than that of the defendants for the sale of gasoline at retail on the leased premises.

On appeal the defendants assign numerous errors, argued under the following points: (1) That the evidence required the conclusion the assignment of lease was conditional and not absolute. (2) The evidence did not warrant the decision of the trial court requiring the sale or removal of the defendants' pumps and tanks.

Under their first point the defendants urge the principle that where a written agreement does not express the true intent of the parties due to a mistake of fact or law, equitable reformation should be granted. General authorities are cited to this effect, and our case of Naramore v. Mask, 1948, 52 N.M. 336, 197 P.2d 905. In that case, upon the sale of a filling station and camp ground there was an express agreement the buyer would assume

a three year contract to purchase Continental products from Naramore, which contract included a liquidated damage clause omitted from the subsequent sales contract through oversight. We held under such circumstances reformation was proper. But that case and the general authorities on reformation are not in point in the present case because the trial court found here there was no mistake of fact or law, that the parties dealt at arms' length and that there was never an agreement of any sort binding the plaintiff to purchase his petroleum supplies from Shields or the Valley Oil Company.

■■ We must view the testimony in the light most favorable to support the findings and judgment. Hopper v. White, 1950, 54 N.M. 181, 217 P.2d 260; Brown v. Cobb, 1949, 53 N.M. 169, 204 P.2d 264; Pavletich v. Pavletich, 1946, 50 N.M. 224, 174 P.2d 826; Thurmond v. Espalin, 1946, 50 N.M. 109, 171 P.2d 325; Pugh v. Heating & Plumbing Finance Corporation, 1945, 49 N.M. 234, 161 P.2d 714; McDonald v. Polansky, 1944, 48 N.M. 518, 153 P.2d 670. So viewing the testimony, we find there is sufficient evidence to support the trial court's findings and judgment.

Even absent this rule a fair appraisal of the testimony of Shields leads one to the conclusion that he was only looking for an outlet for the products he was selling at wholesale, and that he relied upon the quality of his products, good service and personal relations to keep the business. Although he was selling his products to a considerable number of retailers, very few were bound by contract to purchase from him. In fact, he testified quite frankly that he never found it profitable to try to do business with a dealer who did not want to purchase from him, and he did not try to do business with a dealer who was dissatisfied.

Business and personal relations were very pleasant between Shields and the plaintiff, and the latter purchased all of his gasoline from Shields so long as the former operated the business. After Shields sold the wholesale business to the defendants, the plaintiff became dissatisfied with their service and finally stopped buying from them, although he continued to use their pumps and tanks, which the defendants refused to sell to him.

The defendants make much of the fact that the plaintiff paid the rent to Shields while the latter was in business, arguing this shows the plaintiff retained an interest in the lease, although the assignment was absolute in form. A sufficient answer to this contention is the finding of fact that this was done at Shields' request to protect him on his primary obligation under the lease.

The defendants seek to impose a condition on the assignment of lease by virtue of the fact the assignment provided the plaintiff was to have free use of the pumps, tanks and connections during the term of the lease. They argue this provision coupled with the statutes prohibiting the sale of misbranded gasoline, Secs. 69-503 through 69-507, N.M.S.A., 1941 Comp., protects their interest under the assignment to have only Valley Oil Company gasoline sold on the premises. This argument does not impress us in view of testimony that gasoline sold by the plaintiff and many other dealers purporting to sell various brands came out of the same spigot from the same refinery. If any actual fraud was committed it was upon the customers and not the defendants, and as there is no appearance on behalf of such customers, no relief can be awarded them.

The defendants complain of the finding of the trial court with regard to the custom in the gasoline business in Albuquerque for the retailer to buy the pumps when he discontinues buying gasoline from the wholesaler who furnishes and installs the pumps and the provision in the judgment for the appointment of an appraiser for the determination of the reasonable market value of the equipment. This provision, however, even if erroneous, which we do not decide, cannot be prejudicial to the defendants, as provision is made they may refuse to sell the equipment at any price and remove the same from the plaintiff's premises if they so desire.

The judgment will be affirmed, and **it** is so ordered.

SADLER, COMPTON, and COORS, JJ., concur.

LUJAN, C. J., not participating.